IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-01290-CBS

RODNEY LEE WHALEN,

Plaintiff,

v.

CAROLYN W. COLVIN,

Defendant.

---

MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Shaffer

This action comes before the court pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381, *et seq.*, for review of the Commissioner of Social Security's final decision denying Rodney Lee Whalen's ("Plaintiff") application for Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated November 25, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c). (*See* Doc. 21). The court has carefully considered the Complaint (filed May 7, 2014) (Doc. 1), Defendant's Answer (filed August 11, 2014) (Doc. 10), Plaintiff's Opening Brief (filed September 4, 2014) (Doc. 14), Defendant's Response Brief (filed November 17, 2014) (Doc. 15), Plaintiff's Reply (filed November 21, 2014) (Doc. 16), the entire case file, the administrative record, and the applicable law. For the following reasons, the court affirms the Commissioner's decision.

1

**BACKGROUND**

In November 2011, Plaintiff filed an application for disability benefits, alleging a disability onset date of February 2, 2011. (*See* Social Security Administrative Record (hereinafter "AR") at 9, 26, 116-21). Plaintiff alleged that his ability to work was limited by muscular atrophy in his right arm and high blood pressure. *See Id*. at 150, 157. Plaintiff was born on February 7, 1959, and was 52 years old on the date of his alleged disability onset. *Id*. at 19, 116. He completed the 12th grade and has previous work experience as a warehouse worker, a construction worker, and a prep cook. *Id*. at 30, 41, 150-51. After his initial application was denied, Plaintiff requested a hearing, which was held on February 4, 2013, before an Administrative Law Judge ("ALJ"). *See Id*. at 1-5, 24-50. Plaintiff was represented by counsel at the hearing.

Plaintiff, who is left-handed, testified that he suffered from muscular atrophy in his right arm, and that he could not lift more than five pounds or reach higher than a 90-degree angle with his right arm. *Id*. at 31-32. He stated that even when he used his right arm, it was with an assist from his left arm. *Id*. at 36. He further testified that he could reach out and grasp and hold things with his right hand, but that his fingers tingled when he did so. *Id*. at 32. He also stated that, due to nerve damage, physical therapy treatments were ineffective. *Id*. at 33. When asked what he did to keep himself busy during the day, Plaintiff testified that he cared for his pet pheasants and performed some household chores such as dusting, vacuuming, and laundry. *Id*. at 34-35. Plaintiff testified that, during the weekends, he and his roommate would run errands, or spend time at his roommate's cabin. *Id*. at 36. Plaintiff also testified that his ability to walk was limited by his arm condition. He explained that his shoulder and fingers would go numb and, therefore,

he would need to sit and prop his arm up. *Id*. at 37. In addition, Plaintiff testified that he had been treated for a reoccurring inguinal hernia, which limited his ability to lift or squat. *Id*. at 39-40.

A vocational expert ("VE") also testified at the hearing. *Id*. at 42-49. The ALJ asked the VE to assume hypothetically that an individual of Plaintiff's age — with the same education and past work experience as Plaintiff — had the following limitations: (1) can function with the right upper extremity only with an assist from the left; (2) the left upper extremity is limited to light level exertion; (3) no reaching with the right upper extremity beyond 90-degrees out from the body; (4) vocational handling, fingering, and feeling with the right upper extremity; (5) standing, walking, and sitting up to six hours in an eight hour work day; (6) pushing and pulling with the lower extremities up to a light level; (7) no pushing and pulling with the right upper extremity; (8) pushing and pulling with the left upper extremity within the light level; (9) never climb ladders, ropes, or scaffolds; (10) no balancing, squatting, or crawling; and (11) avoid exposure to extreme cold, vibration, and hazards such as unprotected heights and machinery. *Id*. at 42-43. The ALJ also specified that the job could be performed at a semiskilled level. *Id*. at 43.

Based on these limitations, the VE testified that all of Plaintiff's past relevant work would be eliminated. *Id*. However, the VE identified three other "light" exertional jobs that someone with those limitations could perform, and testified about the number of each position in the regional and national economy: (1) office helper, SVP: 2 (1,397 Colorado; 89,460 National); (2) sales attendant at a self-service store, SVP: 2 (3,420 Colorado; 194,463 National); and (3) security guard, SVP: 3 (5,015 Colorado; 330,564 National). *Id*. at 43.

When asked whether his testimony was consistent with the Dictionary of Occupational Titles, the VE stated that he had to consider whether these jobs were consistent with the ability to

use only one arm. He further testified that, based on his experience and recent validated studies,

all three positions would be compatible with an individual who could only use one arm. *Id*. at 44.

Plaintiff's counsel then posed a second hypothetical in which she asked the VE to assume

that the individual would be restricted to standing and walking up to three hours in a day, could

sit for an unlimited amount of time, and could only lift and carry 10 pounds. *Id*. The VE testified

that such a person could only perform at a sedentary level. *Id*. Plaintiff's counsel then asked the

VE whether employment existed for an individual who would be off task more than 10 percent

of the work week due to psychological factors. *Id*. The VE testified that there likely would be

jobs for such an individual. However, he also concluded that being off task 20 percent of the

time would be the cut off point for employability. *Id*. at 45.

The ALJ then asked the VE whether a reduced standing and walking limitation — three

hours out of an eight-hour work day — would erode the previously identified light jobs or lower

the exertion level to sedentary. *Id* at 47. The VE confirmed that light work with a three hour

standing limitation would be considered "seated light or sedentary." *Id*. at 48. The VE also

testified that the office helper and security officer jobs could still be performed; however, the

sales attendant job would be eliminated. *Id*. at 48. The VE further testified that there would be an

erosion of fifty percent in the number of office helper and security guard positions. *Id*. at 48-49.

On March 6, 2013, the ALJ issued his decision denying benefits. *Id*. at 6-23. The ALJ's

opinion followed the five-step process outlined in the Social Security regulations.[1] At step one,

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

the ALJ found that Plaintiff had not engaged in substantial gainful employment since November 28, 2011. *Id*. at 11. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) right arm muscular atrophy; (2) high blood pressure; (3) inguinal hernia; and (4) major depressive disorder. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 11-12.

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations:
>
> - Can stand/walk for about 3/8 hours alternating positions as needed during those three hours;
> - Can sit for about 6/8 hours;
> - Can use the right upper extremity only with assistance from the left upper extremity;
> - Can use the left upper extremity to perform light exertional activities;
> - No reaching with the right upper extremity beyond 90 degrees out from the body;
> - No more than occasional handling, fingering and feeling with the right upper extremity;
> - Can push and pull with lower extremities at light exertional level;
> - No push and pull with the right upper extremity, but can push and pull at light exertional level with the left upper extremity;
> - Can never climb ladders, ropes, and scaffolds;
> - No balancing, due to the fear of falling and inability to use right upper extremity for stability or precaution;
> - No crawling and less than occasional crouching, stooping, and squatting;
> - Should avoid concentrated exposure to extreme cold, vibration, and hazards such as unprotected heights and machinery;
> - Can perform semiskilled work.

*Id*. at 13. In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's records. The ALJ concluded that although Plaintiff's medically determinable

impairments could reasonably be expected to cause his alleged symptoms, the evidence did not support a finding that Plaintiff was as limited as he claimed. *Id*. at 15.

The ALJ specifically noted that Plaintiff's medical records were not consistent with his allegations of mental impairment. *Id*. Indeed, the ALJ observed that the objective medical evidence showed that Plaintiff's depression was largely situational, as it was made worse by his physical issues and his lack of employment. *Id*. And Plaintiff's treatment records only noted some issues with losing focus and attention, but did not specify any marked limitation in Plaintiff's concentration, persistence, and pace. The ALJ also found Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms to be "not entirely credible." *Id*. at 15.

With respect to Plaintiff's physical limitations, the ALJ credited the opinion of Dr. Adam Summerlin, who performed a consultative examination on Plaintiff and concluded that Plaintiff could only occasionally reach with his right arm, and could lift no more than 20 pounds occasionally and 10 pounds frequently. *Id*. at 16, 217. The ALJ concluded that Dr. Summerlin's assessment was consistent with the medical evidence of record and, accordingly, gave his opinions great weight. *Id*. at 16-17.

The ALJ also considered the opinions of Ginger Todd, P.A., who had a treating relationship with Plaintiff. *Id*. at 18. The ALJ found Ms. Todd's conclusions — with regard to Plaintiff's right arm, standing, and walking limitations — to be persuasive and supported by the medical evidence. *Id*. The ALJ concluded, however, that Ms. Todd's opinion that Plaintiff could lift only 10 pounds with his left arm to be unsupported by the evidence. Consequently, the ALJ gave this specific opinion no weight. *Id*.

At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. *Id.* at 18. At step five, the ALJ found: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 19. Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id.* at 20. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff requested review by the Appeals Council. *Id.* at 104-08. The Appeals Council denied his request on March 25, 2014.  *Id.* at 1-5.  The decision of the ALJ then became the final decision of the Commissioner.  20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted).  Plaintiff filed this action on February 13, 2014. (Doc. 1). The court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole.  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003).  The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007)

(internal citation omitted).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted).  The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ (1) improperly accounted for Plaintiff's mental limitations in the RFC; (2) erred in discounting the opinions of a consulting psychologist; (3) misapplied the medical-vocational guidelines; and (4) erroneously included jobs that had been eliminated by the VE.

### A.     Mental RFC

On appeal, Plaintiff contends that the RFC fails to address all of the limitations resulting from his severe impairments. Specifically, Plaintiff contends that the "ALJ incorrectly converted his finding that plaintiff has deficits in concentration, persistence or pace into a finding that plaintiff can do semiskilled work." (Doc. 14 at 39). This argument is not well taken.

At step three, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." (AR at 12). The ALJ then discussed the evidence in the record:

> Mental health records noted that [although] the claimant had some
> trouble with losing concentration, he seemed to be [of] above

> average intelligence. At the hearing, he did not express any significant limitations in this area. However, given the medical evidence, the undersigned finds that the claimant's depression and his chronic physical pain would be reasonably expected to cause moderate limitations in his ability to sustain concentration, persistence and pace.

*Id*. (internal record citation omitted). However, after reviewing the evidence in the record, the ALJ concluded — at step four — that Plaintiff's alleged mental limitations were not as severe as he alleged. *Id*. at 15. The ALJ further concluded that there was nothing in the record to show that Plaintiff's "current mental functioning is significantly different than it was before when he successfully worked for about 18 years as a diesel mechanic." *Id*. Consequently, the ALJ concluded that Plaintiff was capable of semiskilled mental work. *Id*.

As the court understands the argument, Plaintiff contends that because the ALJ found some cognitive impairments at step three of the assessment, he must explicitly include an accommodation for those impairments in the RFC. Plaintiff has not cited any authority for this proposition, "and the applicable authority does not appear to include such a requirement." *Nguyen v. Colvin*, No. 13-cv-2609-KLM, 2015 WL 148667, at \*9 (D. Colo. Jan. 12, 2015). "The SSA has made clear that the 'RFC assessment must be based on all of the relevant evidence in the case record . . . .' however, *it does not require the ALJ* to explain the RFC in any particular way or *to explicitly incorporate his findings at steps two and three into his written RFC*." *Id*. (quoting SSR 96–8p, 1996 WL 374184, at \*5 (July 2, 1996)) (emphasis added).

As the ALJ recognized, determinations at step three are different from those at step four. *See Roman Jimenez v. Colvin*, No. 12 Civ. 6001(PGG)(FM), 2014 WL 572721 (S.D.N.Y. Feb. 13, 2014). Indeed, the ALJ specifically noted that the limitations identified at step three "are not [an RFC] assessment . . . . The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions." (AR at

9

12). "In other words, identifying an impairment at Step Three — even a marked impairment — does not define the scope of residual functional capacity." *Roman Jimenez*, 2014 WL 572721, at *14; *see, e.g., Anderson v. Colvin*, No. 12–1102, 2013 WL 1339379, at *6 (10th Cir. Apr. 4, 2013) ("the ALJ was not required to include any of [the doctor's] 'B criteria' opinions in his RFC assessment").

Here, at step four, the ALJ properly performed the more detailed evaluation of the record evidence. (*See* AR at 13-18). The ALJ considered and weighed the reports and opinions of treating and evaluating professionals, as well as Plaintiff's own testimony, and concluded that the record did not support an impairment in Plaintiff's cognitive abilities. *Id*. He further concluded that, based on the evidence, Plaintiff's mental functioning was not significantly different than it was when Plaintiff had previously performed semiskilled work. *Id*. The ALJ's prior determinations at step three have no bearing on this finding. *Roman Jimenez*, 2014 WL 572721, at *14; *Anderson*, 2013 WL 1339379, at *6. Therefore, the court finds no support for Plaintiff's position, and further concludes that the ALJ did not err when he declined to include any cognitive limitations in the RFC other than limiting Plaintiff to semiskilled work.

**B.     Consideration of Dr. Vega's Opinions**

In January 2013, Plaintiff's counsel arranged for Plaintiff to be seen by Jose Vega, Ph.D., for a mental health evaluation. (AR at 278-85). In his report, Dr. Vega (1) diagnosed Plaintiff with Major Depressive Disorder; (2) concluded that Plaintiff functioned in the "low average to average range of intelligence;" and (3) assessed Plaintiff with a GAF[2] score of 50-55 (current).

---

[2] The Global Assessment of Functioning (GAF) "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of [social, occupational, and psychological] functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (Text Revision 4th Ed. 2000) ("DSM-IV")).

*Id*. at 282-83. Dr. Vega also completed an RFC assessment, in which he concluded that Plaintiff

had impaired concentration, persistence, pace, social interaction, and adaptation. (AR at 284-85).

With respect to Dr. Vega's clinical exam findings, the ALJ found:

> The undersigned has considered the examining opinions of Dr.
> Vega, but gave them little weight. First, Dr. Vega is not a treating
> physician, he is a consulting physician who was sought out by the
> claimant's representative. Therefore, he was not familiar with the
> claimant's functioning over time, and could not realistically verify
> that the claimant's one documented episode of depression had been
> present since childhood. Secondly, his opinions are not consistent
> with the mental health treatment notes in the file. The treatment
> notes indicate that the claimant had some problems with
> concentration, but had above average intelligence, appropriate
> affect, good memory, and clear and logical thought processes.
> However, Dr. Vega felt that the claimant had below average
> intelligence, problems with memory and attention, and difficulty in
> nearly every mental function area. Given the discrepancies
> between the treatment notes and the consultative evaluation by Dr.
> Vega, the undersigned gives more weight to the medical records,
> as they were notes taken when the claimant was seeking actual
> mental treatment and were not obtained to bolster or further
> document his impairments for his disability claim. Nevertheless,
> the undersigned has considered the opinions of Dr. Vega, but they
> were ultimately given little weight.

*Id*. at 17.

With respect to Dr. Vega's RFC assessment, the ALJ noted that Dr. Vega had given "no

basis for his extreme opinions other than his one-time evaluation of [Plaintiff] and a vague

reference to the mental health notes." *Id*. Consequently, the ALJ accorded no weight to Dr.

Vega's RFC limitations. *Id*. On appeal, Plaintiff argues that the ALJ's reasons for rejecting Dr.

Vega's opinions were improper. (Doc. 14 at 43-47).

Under the regulation, "[t]reating source medical opinions are . . . entitled to deference and

must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins v. Barnhart*,

11

350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p). The Tenth Circuit has set forth those

factors as

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1301 (internal quotation marks omitted).

Where, as here, the medical opinion at issue does not constitute a "treating source,"[3] the

court, nevertheless, evaluates the opinion by applying the same factors that are generally used to

assess treating source opinions. Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA

Aug. 9, 2006); 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6). The regulations do not

require the ALJ to specifically discuss all of the factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258

(10th Cir. 2007).

Here, the ALJ specifically invoked several of the above-listed factors to determine the

weight given to Dr. Vega's opinion. In noting that Dr. Vega was not a treating physician and was

retained at the behest of Plaintiff's attorney, the ALJ demonstrated his consideration of the first

two factors: (1) the length of the treating relationship and the frequency of examination; and (2)

the nature and extent of the treating relationship. Further, in noting the discrepancies between Dr.

---

[3] A treating source is a medical professional capable of providing a detailed and longitudinal picture of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). It is a relationship that requires both duration and frequency. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."). Dr. Vega examined Plaintiff on a single occasion.

Vega's opinions and the treatment notes, the ALJ considered whether Dr. Vega's determination was consistent with the other evidence of record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Accordingly, the court finds that the ALJ's consideration of Dr. Vega's opinion, in this regard, was appropriate.

Further, the court finds that the ALJ's assignment of "little weight" to Dr. Vega's opinion is supported by the substantial evidence. As the ALJ observed, the treating notes from Spanish Peaks Mental Health Center ("Spanish Peaks") were inconsistent with Dr. Vega's extreme limitations. (AR at 266-277). According to Ms. Mondragon, Plaintiff's counselor at Spanish Peaks, Plaintiff was oriented, had the appropriate affect, and was pleasant and cooperative. *Id*. at 276. In addition, she concluded that Plaintiff was of above average intelligence and had intact judgment and insight. *Id*. Further, although Plaintiff reported some trouble with his short term memory, he claimed no problems with his recent and long-term memory. *Id*. And at a later session with Ms. Mondragon, Plaintiff reported that he was "doing better and feeling fine." *Id*. at 266. This evidence is indeed inconsistent with Dr. Vega's conclusions that Plaintiff was of below average intelligence and had severely restricted mental functioning.

Plaintiff argues, to the contrary, that his treatment notes *are* consistent with Dr. Vega's conclusions and assessments. The court views this argument as little more than a thinly veiled request for this court to reweigh the evidence, which it cannot do. *Oldham*, 509 F.3d at 1257. This court may review only the sufficiency of the evidence; and in this case, there was enough evidence to support the ALJ's findings. *Id*.

With respect to the ALJ's rejection of Dr. Vega's RFC assessment, the ALJ appropriately observed that Dr. Vega provided little basis for his extreme RFC assessment. *See* 20 C.F.R.

§ 404.1527(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). In his RFC assessment, Dr. Vega opined that Plaintiff's mental impairments would impose *marked to extreme* limitations in a number of functional areas. (AR at 284-85). Although Dr. Vega stated that his diagnosis and ratings were based on his clinical exam findings, there is no support for such marked to extreme limitations in his objective assessment. Accordingly, the court finds that the ALJ's rejection of Dr. Vega's opinion was based on substantial evidence. *White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (discrepancy between treating physician's very restrictive functional assessment and examination notes was a legitimate basis for rejecting that opinion).

Consequently, the court finds no reversible error in the ALJ's evaluation of Dr. Vega's opinions.

**C.   Step Five Analysis**

Plaintiff also contends that the ALJ erred at step five of the sequential analysis. Specifically, he contends that the ALJ misapplied the medical-vocational guidelines. He also contends that ALJ erred in identifying occupations — and the respective job numbers for those occupations — that he could perform despite his limitations. The court perceives no reversible error.

i. Medical-Vocational Guidelines

Because the burden shifts to the Commissioner at step five, "the claimant is entitled to benefits if the Secretary cannot establish that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). Here, the ALJ concluded that Plaintiff could perform various light jobs that both existed in the national economy in significant numbers

and that would not require Plaintiff to stand or walk for more than three hours in an eight hour day. (AR at 19-20).

On appeal, Plaintiff asserts that the ALJ misapplied the medical-vocational guidelines. Specifically, he contends that because he cannot stand or walk for more than three hours in an eight hour day, he is necessarily precluded from performing a full range of light work.[4] Therefore, according to Plaintiff, he is limited to sedentary work. Plaintiff asserts that this limitation, coupled with his age, necessitates a finding that he is disabled. The court disagrees.

Here, the ALJ did not conclusively apply the medical-vocational guidelines to Plaintiff; nor was he required to do so. *See Kinnett v. Department of Health and Human Services*, 30 F.3d 142, at *2 (10th Cir. 1994) (Table). Therefore, the ALJ was not required to "find that the [Plaintiff] can perform the full range of work in a particular exertional category." *Id*. Indeed, the ALJ specifically concluded that Plaintiff could not perform the full range of light work. (AR at 19). Consequently, the ALJ sought — as he was required to do — "expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy.'" *Id*. (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991)). The VE testified that, despite his limitations, Plaintiff could perform work as an office helper or a security guard. Because the ALJ was entitled to rely on the VE's testimony in reaching his decision, the court is not persuaded by Plaintiff's arguments regarding the medical-vocational guidelines.

ii. Sufficient Jobs in the National Economy

During the administrative hearing, as described more thoroughly above, the ALJ posed several hypotheticals to the VE. *See* pp. 3-4, *supra*. In the original hypothetical, the ALJ asked

---

[4] In passing, Plaintiff also faults the ALJ for failing to state how much weight Plaintiff can lift. However, the RFC specifically states that Plaintiff can use his left arm to perform "light" exertional activities. "Light work" is specifically defined in the regulations as "lifting not more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Consequently, the court perceives no error.

the VE to assume that the individual would be limited to, *inter alia*, standing, walking, and

sitting up to six hours out of an eight hour work day. The VE testified that an individual with

such limitations could be employed as an office helper, a sales attendant, or a security guard.

(AR at 43-44). When, however, this limitation was reduced to three hours out of an eight hour

day, the VE eliminated the sales attendant position. The VE also testified that the number of

remaining jobs would be eroded by fifty percent. Plaintiff now contends that reversal is

warranted because, despite adopting the more limited hypothetical in the RFC, the ALJ

erroneously included the sales attendant job and cited the job numbers relevant to the original

hypothetical, as opposed to the eroded numbers. The court concludes that these errors are

harmless.

During the hearing, the VE testified that — under the more limited hypothetical — there

would be 700 office helper jobs in Colorado and 45,000 jobs nationally. (AR at 49). In addition,

the VE testified that there would be 2,500 security guard jobs in Colorado. *Id*. Thus, even if the

court only considers these two jobs, out of the three identified by the ALJ, there were still 3,200

jobs available in Colorado and 45,000 jobs available nationally. Further, the court notes that the

ALJ also testified that there were 330,564 security guard jobs available nationally. *Id*. at 43. The

VE stated that, like the other jobs, this number would be eroded by fifty percent to account for

the more limited hypothetical. *Id*. at 49. Thus, although the VE did not specifically state a

number, a fifty percent erosion would leave nearly 160,000 security guard jobs nationally. Based

on the foregoing numbers, the court does not believe that any reasonable fact finder could have

determined that suitable jobs did not exist in significant numbers in the national economy. *See*

*Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (concluding that the "significant

number" analysis should focus on the number of jobs in the national economy, not merely the

regional economy); *see also Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (implicitly findings that 11,000 jobs in the national economy is significant).

Therefore, the court concludes that the ALJ's erroneous inclusion of the sales attendant job, and his misstatement regarding the number of jobs available was harmless.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Mr. Whalen was not disabled within the meaning of Title XVI and, therefore, not eligible to receive Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his or her own fees and costs.

DATED at Denver, Colorado, this 23rd day of March, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge